Our last case this morning is HLFIP Holding v. York County, PA et al., 2022-1940. Mr. Weingartner. Good morning. May it please the Court. The 617 patent at issue in this case is not about scanning the mail. It's not merely computerizing or automating an existing process, as defendants have argued below and as the District Court found. But it's about detecting and eliminating contraband in a correctional setting in which creating digitized copies of inmate correspondence is only one step in a method that also includes generating a record and a database of inmate mail access, which allows the benefit of real-time investigation and surveillance of unlawful activity, which was not something that was previously possible. Isn't this all software? Your Honor, I don't think it is. Passing information back and forth electronically? It is, but it's not something that had happened in that particular field before, in the field of corrections, and we believe that... But is novelty sufficient to satisfy 101? Abstract idea? I think what's sufficient, Your Honor, is that there's a detailed solution provided with actual technical steps. They may look humble, taken individually, but together had not been used in that context and lead to a solution. And it's not merely claiming the desired result, it's the particles that lead to that. But don't you agree that detail alone doesn't get you over the 101 hurdle? I don't disagree, Your Honor. I don't disagree. What part of your claim is directed towards an improvement of contraband detection as opposed to just efficiencies that you get from standard automation? Your Honor, we're not claiming the details. What leads to that is the ability to, first of all, to avoid human contact with, for example, fentanyl coated letters or whatever it might be, which are potentially lethal. There's no need for them to touch that. There's no need for that contraband to be handled because this is, again, for the first time, and I realize novelty is not the test, the postal mail would be scanned, the content would be captured, there would be association. These are all, I'm kind of paraphrasing, association with the recipient to be a unique identifier so that everything could be tracked and searched. And in addition, and this is all, by the way, in material that was in the possession of the defendant that was appended to her complaint. So the capture of this information was not possible before. It wasn't manually done either. It was simply infeasible to do. And in terms of, for example, of the monitoring of access by a recipient inmate, it would require a kind of a panopticon of perpetual observation by humans of someone in their prison cell or at a kiosk, which wasn't doable before. So we acknowledge that each piece looked at individually could look like simply applying things that were known, but we urge that here, this hadn't been done before in this field, and that together they provide a system that allows those benefits. Do you dispute that this is really computerizing an existing process? With respect, Your Honor, no, we don't. The existing process did not permit the capture of content. It did not permit the monitoring of recipient inmate access or the association. Lots of potential additional benefits with AI and so forth that aren't within the patent, but that are permitted by the system that the patent disclosed and claimed. Let me just clarify, because I'm not sure if I understood your answer. You do dispute that this is computerizing an existing process, or you do not dispute that? We do dispute that it is. In other words, there's maybe aspects. I don't even know if there were any aspects that were computerized. This was all done manually, but the point is that there are aspects of what's claimed that could not have been done manually. In other words, there was a manual process that didn't lead to the elimination of contraband. This process does what could not have been done manually, and there's evidence in the As a former automation engineer myself, it's something that can be difficult, and I think the problem with 101 claiming sometimes is that you see a claim that simply claims automation without getting down into the nuts and bolts of how it's done and not laying that out. So I don't think we run afoul of that. Do you agree that we can treat Claim 1 as representative for the asserted claims? I think, yes, Your Honor, we would agree. Thank you. So as I was noting, this has not been done before. It could not have been done manually, so it's not one of mere automation, and we believe the evidence of record supports that. We believe it's in the patent specification, but also, and this is a point of contention between the parties, the complaint in this case appended a document generated by a company called Text Behind, which is the vendor of the technology that is the subject of the infringement case. And it's quite interesting, commend it to the Court's attention, because it lays out almost exactly the facts that we're seeing here. Appendix 121, for example, says that their solution, quote unquote, in the second column, simply eliminates the need for contraband inspection in physical mail. In other words, does what could not have been done manually. It's eliminating that. And in addition, in column four, it talks about the problem of valuable mail content not really being accessible. I suppose someone working in the prison could read a mail, but if their memory is as bad as mine, it wouldn't persist for very long. And so the solution provided here, which is what's disclosed in the patent and the mechanism for achieving this claim in the patent, is that it has what they call advanced technology features to not only preserve the original mail content, but also facilitate investigative process. So what you have is the defendant's essentially own document talking about the technological aspects of what's as simple as they may look in that context, taken together, which we don't think the Court adequately did. We think the Court burdened with cases like this as they are, used a bit of a shorthand, looked at the claims without the fullness of all the claim elements, looked at five of them. We have a chart, which we don't need to burden the Court with going through, but it was in our opening brief. And there's six elements that really weren't referred to by the Court. We don't think the Court adequately analyzed them. But whether, I guess if we're talking about step two, an inventive concept, I mean, you take them separately, you put them all together. I'm not seeing what is beyond generic computers doing all of this. And I didn't see where, I mean, got a text scanner, but that's not inventive either. That's not. So where is it? I mean, you can say, and I know some of our courts have referred to the fact that you have to look at all of these together, but I'm not sure I see a difference between separate or together when it comes to an inventive concept. Well, we think the question, Your Honor, is one of what's conventional in the field. And we don't believe that there's any evidence. And we believe the burden is on the defendant to show that these were conventional in the field. And the evidence shows the opposite, the document that I just referred to, Your Honor. Non-conventional, the using them together, or a non-conventional separate? Well, I believe there's no evidence that they were used in the field at all. And were hardly conventional, because things, what was done manually was not what's invented. But whatever was done was done manually, as far as I know. And these components were not done in this context before, as far as I know, alone or in combination, but certainly not in the combination that's claimed. And I think it goes to step one and step two. And I think that this piece of evidence, which defendant would prefer the court not to pay much attention to, nails it. It's right on point and overlaps almost directly with what's in the claims and what our position is. Which also goes to the issue of whether a fact issue was properly decided by the court at the pleading stage, which we don't believe was appropriate. Are you arguing that the district court erred by addressing Section 101 before conducting claim construction? I'm glad you raised that, Your Honor. No, that's not really our position. I know it was raised in some of the briefing. I think the way we see it, the court had the briefing before the court, and elected not to conduct the hearing, and really did not fully apprise itself of really what the scope of the claim was, what the claim was really about. It might have done that, elected not to. And we thought that was relevant. We think that the way the court reaches its conclusion is not irrelevant. It's not determinative legally, but we believe it's context that's appropriate for the court to consider. I think you just alluded to some type of factual dispute. Can you elaborate on what you were saying there? I apologize, Your Honor. I thought you just alluded before I asked the claim construction question that you thought that there was some type of factual dispute that was resolved. Can you just tell us more? Well, I think there's more than one. I think at the step one phase, the court concluded that this is merely automating. It's merely computerizing the process. The parties had differing views. Whether they were teed up as here is a factual dispute or not, we think is irrelevant. They were before the court, and the court resolved. We believe the court tackled that as a factual issue when it shouldn't have, and didn't get it right. And then we believe that there are other factual disputes with regard to the conventionality in phase two of Alice. You can save the rest of your time, if you like. I prefer to do that, Your Honor. Thank you. Mr. Millikin. Thank you, Your Honor. May it please the court. The district court correctly held the 617 patent claims ineligible. The claims just implement a longstanding human practice, processing inmate postal mail using technology that the specification admits is generic and conventional. Okay, let me ask you. I may have misunderstood. I think your friend made a reference to something you would in connection with the text behind marketing. I'm not sure. But I don't know what the backstory of that is. But can you address it, please? Certainly, Your Honor. I believe my friend is referring to the document in appendix 121 that is a customer-facing marketing document that was put out by the supplier of the accused technology in this case. And our point is not that the court can't consider it. It's attached to the pleadings. The court surely can consider it. Our point is that the document is not relevant because it's not describing anything about Smart's patented invention. It's describing the technology of a competitor. And to the extent it's relevant at all, and I think the proposition that it's relevant at all is dubious, it does talk about how contraband detection can be a difficult problem because some contraband is difficult to detect using human senses. But the patent specification, which my friend did not discuss at any length in his argument, which I think is telling, admits that in the prior art, correctional facilities made photocopies of pieces of inmate mail and they distributed the photocopies instead of the photocopies with electronic copies and then it adds conventional data collection analysis and display steps. And doing that type of data analysis in a specific field of use here, correctional facilities, is contrary to my friend's argument, not sufficient to render something eligible for patenting. So there's no technological invention here. The technology described in the specification admits that. To the extent there's anything new here, it's that the patentee had the idea to automate correctional facility mail processing to make record keeping easier and to mitigate the risk of contraband reaching inmates. But that idea is just that. It's an idea and it's therefore ineligible. And I think this court has several cases that are very closely on point. I think intellectual ventures versus Symantec and fair warning IP are particularly instructive. Symantec held ineligible claims to receiving screening and distributing email because they were directed to a long-standing business practice that had conventionally been performed in brick and mortar post offices and it just invoked generic computer technology. A similar conclusion is appropriate here. And the fact that the 617 patent claims add some token post-solution activity like assigning inmates identifiers or allowing correctional facility staff to flag certain messages, that's not sufficient to confer patentability just like the use of file content identifiers in Symantec wasn't sufficient. I think fair warning is particularly relevant because it refutes SMART's repeated assertions that the logging step of its claims is somehow inventive. Fair warning affirmed a pleading stage in validation of claims to methods of detecting fraud and misuse by monitoring access to sensitive electronic records like health records. And so it confirms that the concept of monitoring access to electronic records is not a concept that's sufficient to confer patent eligibility. That is just what computers do. And so I think that the logging step, whether or not it was included in the district court's articulation of the abstract idea, it doesn't change the focus of the claims and it's not sufficient to confer eligibility in any event. Yes, your honor. I was going to ask you a question. I appreciate that. I assume you agree we can treat claim one as representative for these sort of claims? Yes, your honor. Okay. Can you also respond to his statements about there was some type of factual dispute that was being resolved by the court there? As an initial matter, that argument I'd submit was waived. SMART did not argue in its briefing below that there were factual disputes that made judgment on the pleadings inappropriate. The argument is also easily answered on the merits. The specification itself admits that every single piece of this claim was conventional to the point where the computer components that are utilized in the claims, they're not even illustrated in the patent. The patent just leaves all of that to the knowledge of the skilled artisan, which is a pretty good clue that it was all conventional. And so I'd submit that they simply haven't identified any factual disputes. They concede, and this is pages 30 and 35 of their blue brief, they concede that this was all conventional. So I think it reduces to a question of law that was properly resolved on the pleadings. If the court has any questions, I'm pleased to answer them. Otherwise, I'll cede the balance of my time. Thank you, counsel. Mr. Weingartner has some rebuttal time. I think listening to my friend's discussion, the point is that this is not a long-standing human practice. The Fenn and Napelli's case is based upon that. It's simply fallacious here. The text behind article or brochure makes that clear. We didn't offer it as 112 support or some kind of support for the patent. It's evidence of the state of the art of what's conventional, which is relevant. I don't think it ordinarily comes in in one-on-one cases, but here it happened to be in the record, right there in the complaint, which the court was allowed to look at but elected not to. And I think that piece of evidence really eviscerates the defense here. The business about distributing photocopies doesn't really seem relevant. There's nothing about capturing content or anything to do with the ability to monitor anything. There's still heavily a manual element to that. Also, the term automate that's been used a lot is a factual conclusion that simply and all the case law that's been cited. I think there are cases where a party admits, yes, we've been doing this, now we've automated. And maybe they didn't claim all the great things that enabled it, but instead claimed broadly and were ineligible. But that's not the case here. It's something different in this instance. And again, we think that the text behind, in addition to our specification, which speaks for itself, makes clear. Also, counsel for defendant appellants referred to, this is just what computers do. Not sure what to do with that. Computers do a lot. If computers are kind of off limits in terms of the use for patentability, I think there'd be a lot of talk about that. So I don't give that a whole lot of credit. And finally, the point about every single piece is conventional, quote unquote, that's the issue. The issue here isn't whether individual pieces are in some form of steps or components that individually were known, but someone saw how they could be put together in a new way and achieve something that hadn't been done before, which is the case here. Thank you, Your Honor. Thank you, counsel. The case is submitted and that concludes today's argument.